and Mr. Miller's counsel is here. Are we sharing time today? I wasn't aware of how the court wanted to do that. Well, we had 15 minutes. I don't know how long it's going to take, but each case raises different issues. So yes, we'll take each one up separately. Very good. Thank you, Your Honor. But I'll have to keep you.   You know, somewhat with this time. Okay. Let's see how it goes. Yes. Good morning, Your Honors. May it please the Court. Counsel, my name is Leah Wigrin. I represent Appellant Connor Woods. Your Honors, this case is about two incomplete Miranda warnings that led to a confession that was critical to the government's case in trial. And because substantial independent evidence separate from the confession did not support Mr. Woods's guilt, the confession is not harmless error. And on that basis, we are asking the Court to reverse or vacate Mr. Woods's conviction. Your Honors, as a preliminary matter, there set forth in my reply brief, there is cause for the Court to review de novo the first Miranda warning that was given on December 6th by Sonoma Sergeant Brandon Cutting. However, if the Court declines to review de novo, I do submit that we are able to, on a plain-error review, show that that Miranda warning was deficient. The argument for reviewing de novo is that it is that at the second Miranda warning, everything relied upon the first. Yes, sir. Is that right? Yes. And that's the way the district court judge perceived it. Yes. And it was presented in the motion for suppression, and that is my error, that the first Miranda warning was proper. In preparing this appeal, as I set forth in the reply brief, I listened to the tape. I think it was about the tenth time that I listened to it, that I caught that Sergeant Cutting did not tell Mr. Woods that he had the right to counsel before any questioning began. He told him that he had right to counsel during. In the motion, in the suppression motion, you did point out that at the second Miranda warning that he didn't advise him that he had a right to counsel prior to the prior to the questioning got underway. Yes, Your Honor. Yes, I did. In the motion for suppression, I did point out that Reno Detective Rhodes did not tell Mr. Woods that he had the right to. He said you have the right to an attorney. He did not specify prior and during an interrogation. And that was the basis for the motion to suppress. What happened at the hearing is that it, the district court erroneously thought that Sergeant Cutting's recitation of the Miranda warning was complete and proper. The government was arguing that. I had said that in my motion. The district court in his findings says I listened to the tape two times. He wasn't relying on the motion to suppress. He said I listened to the tape two times, and I hear that Sergeant Cutting, the first Miranda warning, was properly rendered. So in your motion to suppress, the challenge was that he just was not given adequate advisements. Is that correct? Yes, Your Honor. That was the basis of the motion to suppress, that he was not told, that he was given an incomplete Miranda warning, which the government, even before the case told me, was the case, had happened. So we went into the case knowing that there was a Miranda issue. It went into then whether it was voluntary or not. And I, in an abundance of caution in my papers, did do a voluntary analysis. I submit, though, that the court doesn't even need to get there. Under, I believe it's United States versus Bland, the court has said in the past that if there is an insufficient recitation of Miranda by law enforcement, that the court doesn't need to go to the voluntary analysis. Because that, which makes sense, because if the waiver isn't proper in the first place, it's difficult to say that somebody knowingly waived it. Which was my argument, that it wasn't knowing and voluntary because Mr. Woods did not have all of the information given to him. And the government relied fairly heavily on the first Miranda recitation. However, what is in the record from the trial, and I believe the suppression hearing, is that Detective Rhodes did not call Sergeant Cutting. And I understand how police work, it's fluid and it's quick. But this is different from the preceding case where they weren't on the fly. These are Miranda recitations that these officers give as Detective Rhodes in the triple digits, the amount of times in his career that he's given them. So he's relying on Sergeant Cutting's recitation without asking Sergeant Cutting, what'd you say to him, how'd it go? He had no information. He just heard that he had been Miranda-ized the day before. So he relied on that Miranda to give Mr. Woods a cursory, at best, as the district court said, it was not perfection by any means. But the district court allowed it because of thinking that Sergeant Cutting's recitation was proper. I would argue against that, even if Sergeant Cutting's was proper, though. There's no information that Sergeant Cutting was investigating a robbery. He was looking for Mr. Woods because of contact from Reno, because of a robbery. But counsel, what difference does that make in terms of the adequacy of the warning? If the warning was given properly, it apprised Mr. Woods of what his rights were. So what difference does it make what crime was being investigated? Your Honor, what I said in my papers is that I could not find case law that says a global Miranda is good for anything, for any crime. For instance, if Mr. Woods is being investigated for a certain thing, he could or could not waive his rights to speak to police about that thing, about that matter. The next day, when it's something completely different than it's being investigated, it's not fair to bootstrap that waiver, which I'm not submitting, Your Honor, that that first recitation was proper. But it's not fair to rely on that waiver a second day, when you're being investigated for something totally different. You have not- But is there a case that says that? If the focus is on whether or not the defendant understood his Miranda warnings. Yes. I'm finding it difficult to see how it mattered what crime was being investigated if the focus simply is on whether the Miranda rights were given, whether the Miranda rights were understood. Because Mr. Woods apparently indicated he understood the rights, started reciting some of them. And he was not a stranger to the system. So I'm having some difficulty with why that should make a difference. Your Honor, I agree. And I don't think that I'm strong there when it comes to case law. But I was also unable to find any case that said, hey, you're Miranda-ized one day and it's proper. The police can ask you something totally different the next day. Typically, when a Miranda is good on one day and then it's good on the next day, it is because the police are investigating the same situation. And that is logical, in that you can't waive globally your rights if you don't know what's being investigated. And that is a more minor part of this case, Your Honors, though, in that the real issue is that a confession was allowed to go to jury that was improperly Miranda-ized. And the ---- There was other evidence, though. So let's assume just for a moment, because I don't want to ---- I've got a key feature of your time, somewhat. Let's just assume for a moment that there was error in failing to grant the motion to suppress. There was other evidence, though, that was presented. There was evidence, Your Honor. It was circumstantial evidence. And I realize, you know, government lawyers have told me we love circumstantial evidence because we don't have a witness in there to screw it up for us. So I understand that it's powerful, circumstantial evidence. But in this case, the 711 clerk did not see who committed the robbery. There was, as I set forth in my reply brief, a mess when it came to the surveillance ---- the times on the surveillance tapes about when the robbery actually occurred. There was a van that was used in the robbery that was found on the freeway days later by the detective, a serendipitous event for him. There was a ---- Yeah, because it turned out it sure looked like the van that they took. Your Honor, when you look at the ---- when I look at their surveillance tape, it's ---- you cannot tell what color the van is. And it ---- No, later. Later, yes. Evidence at trial. In the daylight. But he saw the van only for the first time on the surveillance tape at night, and then later says, you know, this is what looks like the van. There's no ---- the jury, yes, said, okay, we think that's the van. But circumstantial evidence is the only thing besides the confession in this case. And that's why it's so critical that it was improper to ---- there are two chances to properly Mirandaize Mr. Woods, and they failed on both. But sometimes circumstantial evidence is the most powerful evidence. Yes, Your Honor, I concede that, that circumstantial evidence, if it's ---- and what they did is they wove together a case that the jury did convict on. That would have been a lot of coincidences otherwise. Yes, Your Honor, but there ---- but for instance, when it came to the van, there were two witnesses at trial that were there during the ---- at the night the van was taken, did not identify either defendant. The clerk could not identify either defendant. There was ---- there were numerous items in the van that were not tested for DNA. But there were items in the van that were connected to the defendants as well, though. Yes, yes, Your Honor, there was. But the van was also found on the side of the road days later unlocked, having no idea who had been in the van in between it, to not have any other items tested. At DNA, you had ---- let me ask you this question. Assuming again that the confession is out, okay? Yes. And assuming that all the complaints you have, all the challenge you have to the evidence coming in, the admissibility, assuming you lose on all those points, that the van comes in, the testimony about the gun comes in, the finding of the gun later on in your client's apartment. It was not his apartment, Your Honor. I know, where he was staying, the DNA, the video, and the timeline, assuming all that goes against you because it's something that the jury could find against your client. Would that be sufficient for a jury to find beyond a reasonable doubt that he was the robber? No. Then why not? And, Your Honor ---- Where's the gap? Your Honor, the ---- I will go back to the fact that the detective was ---- and it's obvious when you listen to the tape, desperate to get a confession out of Mr. Woods. He drove from Reno in a nasty storm. He says this on the tape. He had drove all this way to see you, this kind of stuff, four hours. As soon as he heard that Mr. Woods was in Reno, he raced in ---- arrested in Santa Rosa, he raced here to get a confession from him. And he didn't properly mirandize him. But then, okay, I've set that aside. Yeah, okay. I want to know if there's enough circumstantial evidence, assuming all of the evidentiary rulings were proper. And I ---- no, Your Honor, there was not this ---- Where's the gap? What is missing? Why has it failed? It's missing because there was no direct evidence that Mr. Woods is ---- it was the person that committed the robbery that he was convicted of. And I see I have two, almost three minutes left. May I ---- Yes. Would you like me to ---- Yeah, we'll hear from the government on this one, and then we'll come back and pick up the other case. Okay. Very good. Since this is just focused on the suppression of Mr. Woods, let's deal with that. Good morning, and may it please the Court, Adam Flake for the United States. Just to be clear, I hope I made it sufficiently clear in my brief, but we're not contending that the first Miranda warning was correct. We're conceding that the first Miranda warning was improper because it lacked the two words before and during questioning. The officer should have read the card and should have said before questioning, beforehand during questioning. Officer Rhodes also should have read the card. But I think my position is clear on that. But we are claiming ---- we are asserting that he waived the issue by not challenging the first Miranda recitation. Why did he have to do ---- let me ask you this. So did everybody on the motion look at these two Miranda warnings together? Well, we did. Right? You have to. You have to look at totals. You're claiming the claim is, is that the second Miranda warnings were sufficient. But they're only sufficient because, allegedly, the first one was sufficient. That's correct, Your Honor. So you have to look at it together. So why are they ---- and her whole claim was they didn't get adequate warnings. And in the motion to suppress, she points out to the fact that in the second Miranda warning, he wasn't told that he could have counseled prior to the time questioning began. And the only way you correct that is you say, well, the first Miranda warnings were proper. That's ---- You have to look at everything, you know, as we ---- as the case law says, you look at the totality of the circumstances in determining whether he was properly admonished. Your Honor, the reason that we looked at them together was, quite frankly, because everyone involved, the government, the defense attorney, and the court, missed the issue that's now arisen on appeal. And the defense attorney expressly said in the pleadings, Officer Cutting properly Mirandized the defendant on December 6th. And so the premise for all of the litigation in the district court was framed by the defense. And one of the ways in which it was framed by the defense was the defense saying that the December 6th warning was proper. And that's why it was presented in this fashion. And our contention on appeal is, having said that, having said that the December 6th warning is proper, it deprived the district court of the opportunity to evaluate what they're now raising on appeal. The only problem with that is that the district court had every opportunity to determine whether or not he was properly Mirandized. That's certainly true. And the district court attempted to do so on its own. That's true, Your Honor. But the area ---- I don't see how you can say that she's advanced a new theory such that under Guerrero she's foreclosed for making that argument here. The ---- I think the distinction that I'm trying to draw is that her theory ---- the defendant's theory in the district court was that what happened on December 7th was incorrect. And the theory that she is raising now on ---- or the defendant is raising now on appeal is that what happened on December 6th was incorrect. And even though it involves the same issue, it becomes a different ground. Lacking two words is different than failing to recite Miranda after the defendant has said that he understands his right. I mean, I realize it's a difficult argument, but that is the distinction that I'm drawing. It is kind of a difficult argument because you say that the trial court didn't have the opportunity to evaluate the facts because it had the wrong theory, right? Well, I'm saying that the ---- I thought that's what you said, deprived the trial judge of the opportunity to look at all the circumstances because he was misled, like everybody was, that the first warning was adequate. Let's assume he was not deprived of that and he was told, here's what the first warning was, and it didn't say before interrogation. The result would be suppression, wouldn't it? It would be, Your Honor. And I'm not contesting that, certainly. But what I'm saying is maybe deprived is too strong of a word, but it was incumbent upon the defendant to point out, this is my argument, by saying, by failing to ---- by Officer Cutting failing to say before and during question, he deserves ---- he violated Miranda. That was incumbent on the defendant, and the defendant's failure to raise that argument meant that we didn't notice, and I appreciate counsel's candor. They missed it. We missed it. So your point is, basically a technical one, that the theory was an improper theory. Yes, Your Honor. And now, it seems to me, you can make a technical argument that if you challenge, as judges, if you challenge the second Miranda warning, which is based on the first Miranda warning, that kind of subsumes the first Miranda warning, and that was imperfect. So if you're technical about it, it kind of cuts against you, it seems to me, in the long run. It's all a little technical, Your Honor. So let's just ---- I want to hear your argument on ---- assume for a moment that there was error and this suppression motion should have been granted. Why wasn't it ---- why was it harmless? Your Honor, the ---- other than the confession, I will readily concede that the evidence in this case was circumstantial, but it was the totality of the remainder of the evidence is extremely powerful. Let's start with the gun. A gun disappears from a residence that was occupied by Miller and Woods the day before. That gun is used to commit a robbery. That gun is recovered in an apartment where Woods was staying. It was identified in Portland or near Portland. It was identified in Reno. It was identified again in the apartment where Woods was staying. Woods and Miller take a van. They're identified being in the van. The van appears on video. The van shows up in the median, I think, of the freeway in Reno, a similar ---- a van that's ---- I mean, we had pictures of what was recovered. We had pictures. We had video that the jury looked at. The jury was able to determine whether or not they thought it was the same van. We have Woods and Miller in the van. We have the person ---- one of the other people that was in the van had her purse left in the van, and we have her birth certificate in the van again in Reno. We ---- the ---- sorry, one other thing I did want to point out. Courts of Dulgence. We have the DNA evidence puts them in the van. We have bottles and items that have both Millers and Woods' DNA on them. We have a black sweatshirt that's sitting in the van that appears to be the same sweatshirt that is used on video. And again, I will readily concede that this is circumstantial evidence, but the combination of this evidence is extremely powerful, and, you know, the gun could be a coincidence, and maybe somehow Sophie took the gun from Portland and took it to Connor's apartment and somehow got it on a gun. I can't eliminate as a metaphysical certainty that that's not what happened, but eventually when you see how it stacks up, there would have to be so incredibly many coincidences for the very simple explanation not to be the correct explanation. The evidence in this case, while circumstantial, is very powerful even in the absence of a confession. In the case law, they say that a confession is the most, you know, damning piece of evidence for a defendant. You're certainly correct, Your Honor. And I'm not contending that the confession wasn't a very probative, very powerful piece of evidence. It's great evidence, and we certainly would put it in if it were valid if we had to do the case again. But just to be clear, we wouldn't next time around. But even in the absence of that confession, for the reasons that I explained, I think the evidence was any error in admitting that confession was harmless beyond a reasonable doubt. Okay. Thank you. We have a minute for rebuttal. Quick. Then we'll take up the other case. Very good. Thank you so much. Your Honors, I do think it's important to realize that the district court on its own decided that the cutting confession was okay. The court specifically says, I had the play the tape. I had it played twice, so I was absolutely certain what was said. Make no mistake about it. And he was clearly advised of all his rights. So, yes, there was a misapprehension about the cutting Miranda initially, but the court on its own did have the mistaken belief that Mr. Woods was properly Miranda eyes, and that wasn't just because of the theory in the motion to suppress. It depends on the charges. He didn't do it quite on his own. He had some help there. Yes. I know. You get your point. With apologies to his staff. Yes, sir. And I do – I would just like to reiterate that the circumstantial evidence in this case didn't adequately point to Connor Woods as being the perpetrator of this crime. And so it's not – his substantial rights are definitely impacted. So even under a plain error standard, if the court looks at, we think that we should prevail. Thank you. Okay. Okay. That matter. The first case, the United States v. Woods is submitted with their argument from the related case, United States v. Miller. David Neidert on behalf of Michael Miller. Remember, unlike prior counsel, I did not have the – I did not – I was not trial counsel. I was not even original appellate counsel on this case. My prior appellate counsel took a job with the state of Nevada, which precluded private practice. And I substituted in specifically for the oral argument. That said, we got into a little bit in the last discussion whether sufficient of the evidence and whether then this is a circumstantial case. And part of the sufficiency of the circumstantial with respect to my client is it's even more circumstantial with respect to him than it is with respect to Mr. Woods. They had – with respect to Mr. Woods, they at least have – they have a sweatshirt in a van that's similar to the one that's worn by the robber. But what they have with my client is they have a person who was with Mr. Woods in Portland and was with Mr. Woods by looking at the evidence in the light most favorable to the jury's verdict. They have a person who was with Mr. Woods in Portland who – and then the DNA in the van in Portland. And then there was DNA from Mr. Miller in the van. Now, that doesn't necessarily mean that Mr. Miller was with Mr. Woods in the van in Reno. It means he was with Mr. Woods in the van or in – at some point prior to the van being processed, but we don't know exactly when. I understand that they were in the van just a day or so before the robbery occurred in Portland and not in Reno. And certainly the DNA evidence that links Mr. Miller was – could have – at any point in time. We don't know when the DNA was left. We just know that there's DNA evidence in the van. I thought there was some evidence about a telephone conversation where Miller says that he was in Reno at some – he'd been in Reno. Right. And this is where I have – I'm at a disservice as not to have him in trial counsel because when I look at the record with respect to that, what we have is – it's indicated in the record that a record was played and that was certainly referenced by the government in their brief, but the exact word – the exact – that conversation was not transcribed. And so I'm not sure exactly what was said. I'm not – I'm not saying that's not what was said. I'm just saying I don't – that was that particular – that was referenced in a footnote in the government's brief, but whatever he said in that conversation was not transcribed and is not – I couldn't find this part of the record in this case. So we're sort of – so we're in a position where I don't know what exactly the context of that was, not having been trial counsel, not having that particular conversation, but certainly – Well, let's just say that – I don't know if maybe it's too speculative, but with his DNA on items that were in the van, and he was in Portland, and the van makes it to Reno, is it too much to draw an inference that he might have been in – he may well have been in Reno with the van? I think you'd make an inference that he might have been in the van. I'm not sure you're in a position to say that inference that he was in the van gets us to the point where there was sufficient evidence to sustain his conviction for being by the government's theory the getaway driver in the robbery. And so – Does it make a difference what the conversation was about? If the conversation on the telephone was, I'm in Reno or I'm going to Reno, would that be sufficient? Well, I think context is always important, and that's why it's – we don't have the context of the conversation. If you look at that part of the record, you'll just say that there was some discussion over authenticating chain of custody and things of that nature based on PIN numbers. There's a lot of discussion of things, but there's not a lot of discussion about what the contents of that conversation was. What was the evidence? Was it played? It was played, and like I said, but if you look at the record, the record's not clear as to what was actually said in that conversation. And like I said, it's not having been trial counsel. I can't say what it was. I have not listened to that. Is there a record of it, though? Is there a recording? The recording wasn't evidence, yes, it was. That's what I thought. So it's Exhibit 26, I believe, but that's – but it was admitted as evidence. That would let us know then, right? Right. Listening to – did you listen to it? I have not. I mean, like I said, it was part – Okay. The posture of when I took over the case, I have not – I was not trial counsel, so I'm not sure what was said. It's referenced by the government in a footnote in their brief. With respect to the severance argument that we have in our brief, I would say the one thing the government says, well, all the evidence would have been admitted at a separate trial, and that's true with one exception. And the one exception is the issue that was raised at great length in the prior argument, and that is the confession or the admission by Mr. Woods that he was the robber. So certainly the government said it would have been admissible, but I'm not sure what legal theory Mr. Woods' admissions – saying Mr. Woods admitted he committed the robbery would have been admissible in a trial for Mr. Miller. So I agree that – with everybody, this is purely a circumstantial case. It's circumstantial with respect to Mr. Woods, and it's even much more circumstantial with respect to Mr. Miller, and that's the basis for sufficient evidence. Okay. All right. Let's hear from the government, and I'll give you a few minutes for rebuttal. Thank you. Just a point of clarification, Your Honor. The opposing counsel was talking about Exhibit 12, which is the phone call where Miller says that he went. He says, I was in Reno for a while, then I went to Portland, then I came back to Reno. It's not transcribed, but it was played for the jury. I think and I hope I pointed out in my brief where it was played for the jury, and that's what the substance of the conversation was.  The Court is obviously able to listen to the call. So what is the evidence that the jury could have relied upon to conclude beyond a reasonable doubt that he was guilty of these conspiracy, the crime, the substantive crime in the 924-C? Was it C? Yes. The evidence is that the two of them were seen together in Portland. The two of them were certainly in the van together because both of their DNA was found in the van. The Mimi's Cafe video shows that there was certainly a getaway driver. I'll concede that it doesn't show Miller's face or anything like that driving the vehicle. This would have been an easier case if we had it on video sitting behind the wheel, obviously. But the van parks at Mimi's, and the robber gets out for a minute and gets back in. And then the van moves, and the robber gets out and is gone for quite some time and comes back at a dead run. And as the robber is at a dead run, the van pulls away and the robber jumps inside. So this notion that whoever was driving the van didn't know that a robbery was taking place in the middle of the night and picking somebody up in a dead run that's wearing a hoodie. What's the evidence that it was Miller driving the van? Right. The evidence that it was Miller driving the van is readily conceded. It is circumstantial evidence. But as they were together in Portland, they were together in the van. Afterwards, Miller and Woods are talking to the same person on the jail calls about the robbery. Miller on the jail call said, I was in Reno for a while. I was in Portland. Then I went back to Reno. And that puts him in the van at the time of the robbery as the getaway driver? His DNA puts him in the van. I readily concede there's no direct evidence that it was him. We didn't have a picture of him behind the wheel. We didn't have anybody saying he told me to a certainty that he was the driver. It was circumstantial evidence, Your Honor. But again, it's the only explanation that doesn't require many bad coincidences. The 924C count? Yes. In my understanding, he was only charged with that. Correct me if I'm wrong. As an aider and abetter? That's my recollection, Your Honor. But I don't want to misspeak. I could go sit down and check, Your Honor. Well, that was my understanding. But I may be wrong. But what's the evidence to support that he had the same intent? You know, you have to have intent with aiding and abetting. You do. But I think he was there where the – I think the evidence showed that he – I don't think. The gun. The evidence showed that he knew of the gun. That he knew of the gun. He was there in Portland. That's enough for aiding and abetting that he knows of a gun? It was foreseeable to him that Woods would use the gun. He was right there as Woods was getting out of the car to perpetrate the robbery. Again, there's no direct evidence. We couldn't call him and ask him if he knew about the gun. But as in a lot of these cases, his intent has to be inferred from the circumstantial evidence. When did he drink the soda from the can that had his DNA on it? I don't think that they're able to determine the actual age of the evidence. I didn't read the report that way. It could have been at any point. In Portland? Certainly, Your Honor. If there are no further questions, I'll submit. A quick rebuttal? I'll be very quick. I think what we hear is we have evidence that Miller and Woods were together. And we have evidence that Miller and Woods were in a van. And we have evidence that Miller and Woods' DNA is in the van. But we still do not have evidence other than a jail conversation where I went to what's in Portland, Reno, Portland, Reno, that otherwise really links Mr. Miller to that. And on that basis, there really wasn't sufficient evidence. So thank you, the Court. Thank you, counsel. We appreciate your arguments in this case. Yes. We've been pleased today to have some students who are visiting with us today. Is that correct? No? Yes? Who are they? I hope you had a good morning. Very attentive. Thank you.
judges: Paez, Rawlinson, Huck